**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>KDC AGRIBUSINESS LLC, *et al.*,<br><br>Debtors. | Chapter 7<br><br>Case No. 23-10786 (CTG) |
| GEORGE   L.   MILLER,   not individually, but as Chapter 7 Trustee of KDC Agribusiness, LLC, *et al.*,<br><br>Plaintiff,<br><br>v.<br><br>FOLEY & LARDNER, LLP,<br><br>Defendant. | Adv. Proc. No. 26-50207 (CTG)<br><br>**Related Docket No. 5** |

**MEMORANDUM OPINION**

Debtor KDC Agribusiness was an agricultural infrastructure company. Its business was focused on taking grocery products that would otherwise go to waste and recycling them into animal feed.[1] The law firm Foley & Lardner was the debtors' long-term outside counsel.[2] A dispute over the debtors' right to use intellectual property that was at the core of its business ultimately led to KDC's bankruptcy, and

---

[1] D.I. 1 at 14 of 45 (state court complaint). The facts set forth herein are based on the allegations made in the state court lawsuit filed by George L. Miller, the chapter 7 trustee in the KDC bankruptcy case, which is attached as Exhibit A to the notice of removal (D.I. 1). Debtor KDC Agribusiness LLC is referred to as "KDC" or "KDC Agribusiness." Miller is referred to as the "trustee."

[2] Defendant Foley & Lardner, LLP, is referred to as "Foley & Lardner."

in the end the Delaware Court of Chancery found that KDC lacked the right to use it. The debtors' bankruptcy cases converted to chapter 7.[3]

The trustee thereafter brought a legal malpractice action against Foley & Lardner, which had represented KDC both before and during its chapter 11 case, in the Delaware Superior Court. Foley & Lardner removed that action to this Court.[4] The trustee argues that this claim is subject to mandatory abstention under 28 U.S.C. § 1334(c)(2) and that this Court must therefore abstain from hearing it.[5] If the case is subject to mandatory abstention, the parties agree that it would then need to be remanded back to the Superior Court. The trustee further argues that even if mandatory abstention does not apply, the Court should nevertheless remand the case for equitable reasons under 28 U.S.C. § 1452(b).

For the reasons set forth below, the Court concludes that the case is not subject to mandatory abstention under § 1334(c). In short, under the rationale of *Katchen v. Landy* and *Billing v. Raving, Greenberg & Zackin*, the trustee's objection to Foley & Lardner's fees, an objection that raises the same malpractice claim asserted here,

---

[3] *Id.* at 14-18 of 45.

[4] D.I. 1. As a technical matter, removal under 28 U.S.C. § 1452 is to the district court for the district in which the action is pending. *See* 28 U.S.C. § 1452(a) ("A party may remove any claim or cause of action in a civil action … to the district court for the district where such civil action is pending, if such district court has jurisdiction of such claim or cause of action under section 1334 of this title."). Upon removal, however, the case was subject to the district court's February 29, 2012 standing order of reference per 28 U.S.C. § 157(a). *See* 28 U.S.C. § 157(a) ("Each district court may provide that any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for the district.").

[5] D.I. 5.

2

transforms what would otherwise be a non-core state-law action into a core matter.[6] And core matters are not subject to mandatory abstention. Finally, in view of this Court's substantial background in these disputes, the Court concludes that principles of judicial economy counsel strongly against equitable remand under § 1452(b). The Court will accordingly deny the motion to abstain and remand.

### Factual and Procedural Background

The facts that bear on this motion to abstain and remand are not particularly disputed, even if many of the underlying facts are hotly contested between the parties. The debtors' business, founded by Harold Kamine, involved recycling food waste products into animal feed.[7] KDC originally licensed the intellectual property used in the recycling business from California Safe Soil under a 2015 license agreement.[8] In 2019, however, KDC sought to sever its license agreement with California Safe Soil and develop its own processes. In June 2021, California Safe Soil sued KDC and several of its members, including Harold Kamine and his sons, Matthew and Justin Kamine, in the Delaware Court of Chancery.[9] The lawsuit alleged misappropriation of California Safe Soil's trade secrets.[10]

During the pendency of that action, KDC filed a chapter 11 bankruptcy petition in this Court, along with a lawsuit that sought a declaration that KDC (and now its

---

[6] *Katchen v. Landy*, 382 U.S. 323 (1966); *Billing v. Ravin, Greenberg & Zackin, P.A.*, 22 F.3d 1242 (3d Cir. 1994).

[7] D.I. 1 at 14 of 45.

[8] *Id.* California Safe Soil, LLC is referred to as "California Safe Soil."

[9] *Id.* at 15 of 45.

[10] *Id.*

bankruptcy estate) in fact owned the intellectual property it used in its business.[11]  In view of the fact that the Court of Chancery had been overseeing that intellectual property case for many months and was on the eve of trial as of the bankruptcy filing, this Court lifted the automatic stay to permit that case to proceed in the Court of Chancery.[12]

In the face of that ruling, the debtors converted the cases to ones under chapter 7.  Thereafter, the Court of Chancery ruled in favor of California Safe Soil on its claim of misappropriation of trade secrets brought against the individual defendants.  The Court of Chancery also entered a default against the debtors, who did not defend against the action after the conversion to chapter 7.

In early 2025, the trustee filed a complaint in this Court against Foley & Lardner, seeking to avoid and recover certain prepetition transfers.[13]  Later that year, the parties entered into stipulations staying that adversary proceeding.[14]  The stipulations also stayed proceedings on Foley & Lardner's fee application for the work it had performed for the debtors during the chapter 11 cases.[15]

In January 2026, the trustee filed a legal malpractice action against Foley & Lardner in the Delaware Superior Court.  The allegations in that complaint are that

---

[11] *Id.* at 16 of 45.

[12] *Id.* at 17 of 45.

[13] D.I. 1 at 3 of 45.

[14] *Id.*

[15] *Id.*

Foley & Lardner committed legal malpractice during its representation of KDC, both before and after it filed its chapter 11 bankruptcy petition.

Before the trustee filed that action, Harold, Matthew, and Justin Kamine filed a malpractice action against Foley & Lardner in the Delaware Superior Court.[16] That lawsuit originally included allegations related to Foley & Lardner's representation of the debtors.[17] The trustee responded to that action by bringing an adversary proceeding in this Court contending that the Kamines' Superior Court lawsuit asserted a cause of action that actually belonged to the bankruptcy estate.[18] That adversary proceeding, however, was dismissed when the Kamines' amended the complaint in their Superior Court lawsuit to delete references to Foley & Lardner's representation of the debtors.

Foley & Lardner removed the trustee's malpractice action against it to the district court, which referred it to this Court in accordance with 28 U.S.C. § 157(a) and the district court's standing order of reference.[19] The trustee has moved the Court to abstain and remand the case back to the Superior Court.[20]

After reviewing the briefing but before argument on the motion, the Court issued "preliminary observations" raising the question whether the reasoning of *Longview Power* suggested that mandatory abstention was inapplicable on the

---

[16] *Id.* n.4.

[17] *Id.*

[18] *Id.*

[19] D.I. 1. *See* United States District Court for the District of Delaware, February 29, 2012 standing order of reference.

[20] D.I. 5.

ground that the malpractice action was not "pending" as of the time the bankruptcy was filed.[21] The Court also stated that, if mandatory abstention is not applicable, its preliminary reactions were that it was disinclined to abstain as a permissive matter (or to remand on equitable grounds) because, in view of its familiarity with several of the issues arising out of the Court's presiding over the *KDC* bankruptcy case, principles of judicial economy counseled in favor of the Court retaining jurisdiction.

The trustee responded by letter to the Court's preliminary observations in advance of the argument.[22] That letter pointed out that the court's decision in *Longview Power*, suggesting that the state court case must be "pending" as of the filing of the bankruptcy, was largely walked back in *General Wireless Operations*.[23]

The Court held argument on the motion on June 3, 2026. During the argument, counsel for Foley & Lardner stated that it was not asserting that mandatory abstention was inapplicable based on the rationale of *Longview Power*.[24]

### Jurisdiction

Because the trustee's action against Foley & Lardner could have a conceivable effect on the bankruptcy estate, the lawsuit falls within the Court's "related to"

---

[21] D.I. 15 (citing *In re Longview Power, LLC*, 516 B.R. 282, 295 (Bankr. D. Del. 2014)).

[22] D.I. 16.

[23] *See id.* at 1 (citing *In re General Wireless Operations Inc.*, No. 17- 10506 (BLS), 2017 WL 6033562, at *4 (Bankr. D. Del. Dec. 1, 2017)). *See also Sycamore Partners Mgmt., L.P. v. Endurance Am. Ins. Co.,* No. CV 18-1650 (MN), 2019 WL 3431107, at *6 (D. Del. July 30, 2019) (rejecting the reading of § 1334(c)(2) suggested by *Longview Power*). In a subsequent opinion in a different matter, this Court adopted the central point made by the trustee in response to the Court's preliminary observations. *See In re Joann Inc.*, No. 25-51022, 2026 WL 1699191, at *12 n.65 (Bankr. D. Del. June 11, 2026).

[24] June 3, 2026 Hr'g Tr. at 18-19.

jurisdiction under 28 U.S.C. § 1334(b).  The question whether the claim is core or non-core is addressed in Part I.B, below.

## Analysis

**I.   Under the reasoning of *Katchen v. Landy*, the malpractice action is a core matter and therefore not subject to mandatory abstention.**

**A.   Core matters are not subject to mandatory abstention.**

The text of § 1334(c)(2) provides that mandatory abstention applies to cases that are "related to a case under title 11 but not arising under title 11 or arising in a case under title 11."[25]  When a matter is "related to" a case under title 11, that is essentially synonymous with saying that the matter is a "non-core" matter under 28 U.S.C. § 157(b) (subject only to certain exceptions necessary to comply with Article III of the Constitution, in light of *Stern v. Marshall*).[26]  Accordingly, if the malpractice case is a core matter, it must therefore either "arise under" the Bankruptcy Code or "arise in" a case under title 11.  And in that case, mandatory abstention would not apply.

**B.   Under the rationale of *Katchen* and *Billing*, the malpractice action is a core matter.**

At first blush, the malpractice action would appear to be a paradigmatic example of a non-core matter that is within the "related to" jurisdiction of § 1334(b).

---

[25] 28 U.S.C. § 1334(c)(2).  *See also Stoe v. Flaherty*, 436 F.3d 209, 213 (3d Cir. 2006); *In re Art Institute of Philadelphia*, No. 25-50785, 2026 WL 1739153, at *2 (Bankr. D. Del. June 16, 2026); *Joann,* 2026 WL 1699191, at *12.

[26] *See Stern v. Marshall*, 564 U.S. 462, 477 (2011) ("The terms 'non-core' and 'related' are synonymous.") (citation omitted); *In re Combustion Engineering*, 391 F.3d 190, 225 (3d Cir. 2004) ("Cases under title 11, proceedings arising under title 11, and proceedings arising in a case under title 11 are referred to as 'core' proceedings; whereas proceedings 'related to' a case under title 11 are referred to as 'non-core' proceedings."); *Stoe*, 436 F.3d at 217 (same).

Professional malpractice claims arise under state law, exist outside of bankruptcy, and do not depend on the Bankruptcy Code. They are, to use the language of the Supreme Court "the stuff of the traditional actions at common law tried by the courts of Westminster in 1789."[27] Under the rationale of *Stern*, principles of constitutional separation of powers preclude Congress from authorizing a non-Article III tribunal, such as a bankruptcy court, from entering final judgment on such a matter. The 1984 statutory scheme devised in response to the Supreme Court's decision in *Marathon* accordingly designated such actions, when they happen to find themselves in a bankruptcy court by virtue of their effect on a bankruptcy estate (which is what it means for a proceeding to be "related to" a bankruptcy case), as "non-core" matters.[28] Absent the consent of the parties, the role of the bankruptcy judge in a non-core matter is essentially no different from that of a magistrate judge – the court may make proposed findings and conclusions, all of which are subject to *de novo* review in the district court.[29] Under this principle, the trustee's legal malpractice action would ordinarily be a non-core matter and thus subject to mandatory abstention under § 1334(b)(2).

There is, however, a longstanding exception to the principle that such state law disputes must be treated as non-core in bankruptcy. That exception is best

---

[27] *Stern*, 564 U.S. at 484 (quoting *Northern Pipeline Const. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 90 (1982) (Rehnquist, J., concurring in the judgment)).

[28] *See* 28 U.S.C. § 157(b)(2) (identifying "core matters" as ones at the core of the restructuring of the debtor-creditor relationship); *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984) (adopting the "conceivable effect" test for related-to jurisdiction).

[29] 28 U.S.C. § 157(c).

reflected in the Supreme Court's decision in *Katchen v. Landy*. That case arose under the prior Bankruptcy Act of 1898. Under that Act, proceedings in the bankruptcy court were typically divided into two categories.

The first category was "summary proceedings." Those were "controversies relating to property over which [the bankruptcy courts] have actual or constructive possession" as well as "matters of an administrative character, including questions between the bankrupt and his creditors, which are presented in the ordinary course of administration of the bankrupt's estate."[30] As the name implies, the bankruptcy courts "proceed in summary fashion" to deal with such disputes, with processes that are more expedited and informal than is typical in regular civil litigation.

The second category was "plenary proceedings." Those proceedings involved a "slower and more expensive process[]."[31] In this regard, a plenary proceeding was conducted more like ordinary civil litigation in a district court. Indeed, absent the consent of the parties, plenary proceedings would typically proceed in the district court, as the bankruptcy "referee" (the predecessor of the "bankruptcy courts") lacked jurisdiction over plenary matters.[32] In this regard, the distinction between core and non-core matters reflected in current bankruptcy law is drawn, at least in substantial

---

[30] *Katchen*, 382 U.S. at 327 (internal quotations and citations omitted).

[31] *Id.* at 329.

[32] *See Weidhorn v. Levy*, 253 U.S. 268, 274 (1920) ("a referee, by virtue of a general reference … has not jurisdiction over a plenary suit in equity brought by the trustee in bankruptcy against a third party to set aside a fraudulent transfer or conveyance"); *MacDonald v. Plymouth County Trust Co.*, 286 U.S. 263, 267 (1932) ("we can perceive no reason why the privilege of claiming the benefits of the procedure in a plenary suit … may not be waived by consent, as any other procedural privilege of the suitor may be waived, and a more summary procedure substituted").

9

part, on the distinction between summary and plenary jurisdiction under the prior Bankruptcy Act.[33]

The specific question before the Court in *Katchen* was whether the bankruptcy court could proceed on a "summary" basis in a suit to recover a preference against a creditor who had filed a proof of claim in the bankruptcy court. In the absence of the creditor's filing a proof of claim, such an action would be a plenary matter as to which the defendant would be entitled to a jury trial.[34]

The key to the Court's analysis of this question was § 57g of the prior Bankruptcy Act, the predecessor to the provision now codified in § 502(d) of the Bankruptcy Code. That provision operated to "forbid[] the allowance of a claim when the creditor has received [a preference] void or voidable under [the Bankruptcy Act] absent a surrender of any preference."[35]

The process of claims allowance, of course, was a summary proceeding. Indeed, the Court in *Katchen* explained that the Bankruptcy Act provided that claims objections "shall be heard and determined as soon as the convenience of the court and the best interests of the estates and the claimants will permit," and added that the

---

[33] *See Marathon*, 458 U.S. at 99 (White, J., dissenting) ("I take it that the Court does not condemn as inconsistent with Art. III the assignment of these functions—*i.e.*, those within the summary jurisdiction of the old bankruptcy courts—to a non-Art. III judge, since, as the plurality says, they lie at the core of the federal bankruptcy power.").

[34] *Katchen*, 382 U.S. at 327-328.

[35] *Id.* at 330 (internal citations, quotations and ellipses omitted).

statute's legislative history noted that this provision "means that 'objections shall be heard and determined in a summary way.'"[36]

So what happens when a trustee asserts an objection to a proof of claim under § 57g, based on the creditor's alleged receipt of a preferential payment before the bankruptcy?  In that circumstance, the Supreme Court explained, "[u]navoidably and by the very terms of the Act," the result is that "the claim can neither be allowed nor disallowed until the preference matter is adjudicated."[37]  And that means that the preference action becomes, "like other objections, part and parcel of the allowance process and is subject to summary adjudication by a bankruptcy court."[38]

Significantly, the Supreme Court's decision in *Stern v. Marshall* held that actions that would have historically been subject to plenary proceedings generally *cannot*, under Article III, be subject to final adjudication in the bankruptcy court.  At the same time, however, the *Stern* Court expressly carved out and preserved the exception recognized in *Katchen*.  "Although the creditor in *Katchen* objected that the preference issue should be resolved through a 'plenary suit' in an Article III court, this Court concluded that summary adjudication in bankruptcy was appropriate, because it was not possible for the referee to rule on the creditor's proof of claim without first resolving the voidable preference issue."[39]

---

[36] *Id.* (quoting Bankruptcy Act, s 57, sub. f, 11 U.S.C. s 93, sub. f (1964 ed.) and H.R. Rep. No. 1674, 52d Cong., 1st Sess., p. 20) (internal brackets omitted).

[37] *Id.*

[38] *Id.*

[39] *Stern*, 564 U.S. at 496 (citing *Katchen*).

11

The *Stern* Court explained that "the bankruptcy referee could decide whether there had been a voidable preference in determining whether and to what extent to allow the creditor's claim."[40]  Most significantly, the Court observed that once "the referee did that, 'nothing remains for adjudication in a plenary suit'; such a suit 'would be a meaningless gesture.'"[41]  Accordingly, the "plenary proceeding the creditor sought could be brought into the bankruptcy court because 'the same issue [arose] as part of the process of allowance and disallowance of claims.'"[42]

The Third Circuit in *Billing* applied this same analysis to the circumstance presented here – a legal malpractice action, when that very malpractice has been put in front of the bankruptcy court as a basis to disallow the professional's fee application, which is itself a core matter.  There, as here, a law firm that represented a debtor in possession was named as a defendant in a lawsuit alleging that the firm committed legal malpractice during the chapter 11 case.  *Billing* involved an action brought by the debtor-in-possession.  The action here is filed by the chapter 7 trustee.  In both cases, however, the party who was the plaintiff in the malpractice action had also filed an objection in the bankruptcy court to the allowance of the law firm's fees, pointing to the alleged malpractice as a reason why the fees should be disallowed.

In *Billing*, the malpractice action was filed in federal district court, unlike the malpractice action here, which was filed in state court.  The law firm in *Billing*

---

[40] *Id.*

[41] *Id.* (citing *Katchen*).

[42] *Id.* (citing *Katchen*).

accordingly moved the district court to refer the case to the bankruptcy court, on the theory that it was a core matter that could and should be resolved by the bankruptcy court. The district court denied the motion, finding that the debtor in possession was entitled to a jury trial on its malpractice claim. The district court, however, certified that decision for direct appeal to the Third Circuit.[43]

The Third Circuit's decision states that it is addressing only the question whether the debtor was entitled to a jury trial – not whether the case was a core proceeding (because the parties agreed that it was).[44] But as *Katchen* explained, in this context those issues are two sides of the same coin. While the defendant in *Katchen* would have otherwise been entitled to a jury trial on the preference action, the defendant lost that right because the filing of its proof of claim converted the preference action into "part and parcel" of the claims allowance process, which was a summary proceeding decided by the referee in bankruptcy without a jury. Otherwise put, the filing of the proof of claim made the preference action a core matter. So too, here. Bankruptcy courts may enter final judgments in core matters without a jury. That is why asking whether a defendant is entitled to a jury trial, at least in this context, poses the same question as asking whether the claim is core or non-core.[45]

---

[43] *Billing*, 22 F.3d at 1244.

[44] *Id.* at 1245 ("the parties do not contest the district court's holding that the debtors' malpractice claim constitutes a core proceeding under the meaning of the bankruptcy code.").

[45] *See Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33 (1989) (holding that non-claimant defendant in a fraudulent transfer action has a Seventh Amendment jury right and that such legal claim cannot be finally adjudicated by non-Article III tribunal without a jury); *Langenkamp v. Culp*, 498 U.S. 42 (1990) (per curiam) (clarifying that filing a proof of claim subjects creditor's dispute to equitable claims-allowance process and waives jury right, whereas non-claimants retain jury rights on legal claims).

In any event, the Third Circuit's analysis in *Billing* provides a complete answer to the question here. That analysis relied expressly on *Katchen*. Just like the *Katchen* Court found that the avoidance action needed to be adjudicated in order to decide the question of claims allowance, *Billing* explained that "the debtors' malpractice suit mirrors its objection to the allowance of attorney's fees" and that the fee objection "rested heavily on [the debtors'] claims of malpractice."[46] Similarly, just like *Katchen* explained that the filing of the proof of claim made the preference action "part and parcel of the claims allowance process," *Billing* held that because "the merits of the malpractice claims must be resolved before there can be a resolution of the fee dispute," the "debtors' allegations of malpractice are part of the process of allowance and disallowance of claims."[47]

Accordingly, *Billing* held that "an allegation of legal malpractice raised as a defense to post-petition fees for bankruptcy counsel … falls within the process of the allowance and disallowance of claims." For that reason, the debtors "have no Seventh Amendment right to trial by jury," since the assertion of malpractice as a defense to the claimed fees "convert[s] [the malpractice claim] from a legal one into an equitable dispute over a share of the estate."[48] Otherwise put, the assertion of malpractice as a defense to fees converts the malpractice action into what *Katchen* would have described as a summary proceeding and what current law calls a core matter.

---

[46] *Billing*, 22 F.3d at 1252.

[47] *Id.*

[48] *Id.* at 1253.

For this same reason, the trustee's malpractice action against Foley & Lardner is a core matter. Mandatory abstention under § 1334(c)(2) is therefore inapplicable here.[49]

## II. Applying the *Gorse* factors, the Court will deny the motion for equitable remand.

The trustee alternatively argues that even if the case is not subject to mandatory abstention under § 1334(c)(2), the Court should nevertheless remand it on equitable grounds under 28 U.S.C. § 1452(b), which provides that "[t]he court to which such claim or cause of action is removed may remand such claim or cause of action on any equitable ground."[50]

The district court's opinion in *Gorse v. Long Neck* identifies seven factors that courts should consider in deciding whether equitable remand is appropriate:

1. the court's duty to decide matters properly before it;
2. plaintiff's choice of forum as between state and federal courts;
3. nature of the claim or claims, that is, whether purely state law matters which could be better addressed by the state court are involved;
4. prejudice to involuntarily removed parties;
5. comity considerations;

---

[49] Foley & Lardner also makes the broader argument that policing the conduct of professionals retained on a post-confirmation basis is central to the bankruptcy process and thus means that the malpractice claim is one that "arises in" a bankruptcy case. The Fifth Circuit adopted that line of reasoning in *In re Southmark Corp.*, 163 F.3d 925 (5th Cir. 1999). *See also In re Seven Fields Dev. Corp.*, 505 F.3d 237 (3d Cir. 2007) (relying on both *Billing* and *Southmark* in finding a professional malpractice claim against the debtor's accounting firm to be a core matter). In light of the Court's conclusion described above, however, the Court need not consider this alternative argument.

[50] 28 U.S.C. § 1452(b).

6.     economical and/or duplicative use of judicial resources; and

7.     effect a remand decision would have on the efficient and economic administration of the estate.[51]

Several of those considerations favor the trustee, at least to some degree. The malpractice claim arises under Delaware law, and the trustee chose to file in the Delaware Superior Court. The trustee also notes that a related malpractice action by the Kamines remains pending there and argues that coordinating discovery or motion practice in a single state forum could reduce duplication.

Those considerations, however, are outweighed here by the factors counseling against remand. This Court has already become familiar with the factual and procedural background of the disputes through its administration of the bankruptcy case.

Principles of comity do not alter that conclusion. To be sure, legal malpractice is a state-law claim and state courts are the usual fora for such disputes. But this is not a case involving a novel or unsettled question of Delaware law. Accordingly, the Court does not believe that principles of comity require equitable remand.

The trustee also argues that remand would avoid potential inconsistency with the Kamine malpractice action and notes that this Court may not ultimately be able to enter final judgment on every aspect of the trustee's complaint. But the Kamine action no longer includes claims belonging to the estate. For that reason, the Court does not view the risk of inconsistent judgments as a significant consideration. And the argument about the Court's ability to enter final judgment and the trustee's right

---

[51] *Gorse v. Long Neck, Ltd.*, 107 B.R. 479, 482 (D. Del. 1989).

to a jury trial fail in view of the Court's analysis, in Part I.B, of how the malpractice action is, in light of the objection to the allowance of Foley & Lardner's fees, a core matter.

In these circumstances, the Court is satisfied that the *Gorse* factors, taken as a whole, counsel against equitable remand.

## Conclusion

For the foregoing reasons, the Court will deny the trustee's motion to abstain and remand. A separate order will issue. The parties are directed to meet and confer regarding a scheduling order for the adversary proceeding. If an agreed order cannot be submitted under certification, the parties are directed to contact chambers to set a date for a scheduling conference.

Dated: July 9, 2026

_____
CRAIG T. GOLDBLATT
UNITED STATES BANKRUPTCY JUDGE